**UNITED STATES of America ex rel. Russell MEANS, Petitioner,**

v.

**Herman SOLEM, as the duly appointed, qualified and acting Warden of the South Dakota State Penitentiary, Respondent.**

Civ. No. 78–4075.

United States District Court, D. South Dakota, S. D.

Sept. 29, 1978.

---

William Kunstler, New York City, Kenneth E. Tilsen, St. Paul, Minn. and Sidney B. Strange, Sioux Falls, S. D., for petitioner.

William J. Janklow, Atty. Gen., Pierre, S. D., Gary Pashby, and Thomas H. Muilenburg, Sioux Falls, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The petitioner, Russell Means, seeks a writ of Habeas Corpus claiming that his confinement in the South Dakota State Penitentiary is based upon an unlawful conviction obtained in state court. Petitioner raises many claims. His first claim is that he was forced to surrender his absolute right to trial by jury as guaranteed by the 6th and 14th Amendments to the United States Constitution because of (a) the combination of alleged mammoth prejudicial pretrial publicity concerning the petitioner and/or the American Indian Movement, (b) the trial court's alleged refusal to permit him to demonstrate the bitter hostility against him through the jury pool area; and (c) the trial judge's responses to defense challenges for cause.

Petitioner also raises the issue of the constitutionality of South Dakota Codified Laws 22–10–1 and 22–10–4, particularly as they were applied to him. Petitioner claims that the two statutes (the first defining riot and the second specifying certain "riotous assembly" conduct) on their face violate the constitution. Further, he alleges that as applied to his conduct, the statutes clearly violate his First Amendment rights.

Petitioner claims that the state trial judge's refusal to permit Mr. Strange, one defense attorney, to resign or be discharged by petitioner so as to be qualified as a defense witness denied petitioner the effective assistance of counsel guaranteed by the 6th and 14th Amendments to the United States Constitution.

Petitioner further asserts that the failure of the trial court judge, sitting without a

jury, to make written findings of fact and conclusions of law amounted to a lack of consideration of petitioner's proffered defenses of self-defense and defense of others. Petitioner alleges that in this regard, he was denied due process of the law.

Petitioner finally claims that the totality of the circumstances of the entire proceedings (running almost 50 volumes of transcripts and supplemented by seven file drawers of exhibits) indicate that he was denied his due process rights and that habeas corpus relief is necessary. *See Zemina v. Solem*, 438 F.Supp. 455 (D.S.D.1977), aff'd 573 F.2d 1027 (8th Cir. 1978).

After the state trial court's judgment, the petitioner raised these issues, among others, in extensive briefs on appeal to the South Dakota Supreme Court. That appeal was unsuccessful as his conviction was unanimously affirmed. *State v. Means*, S.D., 268 N.W.2d 802 (1978). A petition for rehearing before the state Supreme Court was filed on July 7, 1978, and denied on July 26, 1978. An application for writ of habeas corpus was filed before this Court on July 27, 1978. This application was supplemented by an addendum on August 3, 1978, and a hearing was held before this Court on August 10, 1978. The parties introduced the records before this Court, as well as the transcripts, exhibits and briefs to the Supreme Court. An opportunity to present new evidence was provided, but none was introduced. *See generally Brewer v. Williams*, 430 U.S. 387, 396, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Following the hearing, both parties had an opportunity to submit briefs.

## FACTS

The entire record presented with this petition shows that the petitioner was tried before a state trial judge on two charges and found guilty of the crime of Rioting to Obstruct (S.D.C.L. 22–10–4).[1] The petitioner's alleged criminal involvement was the product of a disturbance involving members of the Tactical Squad of the Sioux Falls,

South Dakota, Police Department and certain trial spectators and other parties. The disturbance occurred in the Minnehaha County Courthouse in Sioux Falls, South Dakota, on April 30, 1974. A state circuit judge was presiding over the trial of five defendants charged with an alleged riot in 1973 in Custer, South Dakota.

On April 26, 1974, a number of spectators in the courtroom refused to rise for the state trial judge. The state judge then ordered the spectators removed. The sheriff and other officers physically carried out some of the spectators that refused to rise. The judge then determined that certain security measures were needed. The security measures included allowing only 20 spectators in the courtroom, locking certain exterior doors, requiring passes for admittance to the courtroom, and requiring those with passes to be pat searched and passed through a metal detector.

Testimony of one state witness, Ken Dahl, established that petitioner met with the defendants charged in the 1973 Custer riot, their legal staff and other supporters on April 29, 1974. The meetings were held in the Van Brunt Building in downtown Sioux Falls. The purpose of the meetings was to determine what the supporters would do when court convened on April 30, 1974, based upon what had transpired on April 26. Dahl's testimony affirmed that he attended the meetings, which were primarily conducted by the petitioner. Petitioner told the 75 to 100 people present that there hadn't been enough publicity and action should be taken to create a mistrial. Petitioner stated that there would be some priests in the courtroom and that they'd be good witnesses for the defense. (Trial Transcript 346) Petitioner also wanted the "toughest warriors" to volunteer under the security pass system, but those who were not chosen were told of other activities planned for outside the courthouse. These activities would include throwing debris at the courthouse. (349) The "warriors" who were to enter the courtroom under the se-

1. In this factual summary, I must consider the evidence at trial in the light most favorable to the government. *Spratlin v. Solem*, 577 F.2d 56, 58 (8th Cir. 1978).

curity pass system were told not to stand for the state trial judge who was conducting the Custer riot trials when court convened on April 30. (348) All at the meeting were told that when a window was broken in the courtroom, after the Tac Squad came in and the fight was to begin, the activity outside the courthouse was also to begin. (349)

The next morning, 20 potential spectators (including the petitioner) were processed through the security system. They sat in the front two rows of the spectator section in the courtroom. The petitioner was still. being processed through the security system when the judge entered the courtroom and the bailiff announced: "The court, please rise."

The spectators in the front two rows refused to rise, so the judge returned to his chambers and told the bailiff to clear the courtroom. After consultation with the sheriff, at 9:30 a. m. the judge stated, "It will be the order of this court those who do not stand in this matter will be removed from the courtroom and kept out. The rest of you may sit down. Thank you." The sheriff and the bailiff ordered the first two rows of spectators to leave the courtroom. They silently refused. A Sioux Falls police captain stated that he requested the presence of the Tactical Squad at 10:20 a. m. because he anticipated trouble. He had been advised that people outside the courthouse had been gathering rocks, pieces of asphalt, pop bottles, wet towels, and other debris, alerting him to the possibility of a disturbance in the courtroom. The Tactical Squad arrived in approximately 30 minutes, forming up in the hallway outside the courtroom. Though the trial judge was urged to rescind his order to stand, he refused and asked the petitioner to use his influence to convince those persons who would not stand to leave peacefully. Petitioner relayed the judge's message, but the spectators again refused. The petitioner

then stated that he must sit with his people and sat on the end of the third row of benches. Thereafter, the Minnehaha County Sheriff directed the police captain to remove the spectators and the police captain relayed the message to the Tactical Squad, apparently ordering them to clear the courtroom.

The Tactical Squad entered the courtroom with riot batons at the ready position, and "all hell broke loose". Though controverted, it was the testimony of a police officer and prosecution witness Dahl that the petitioner struck the officer with his fist, preventing the officer from moving past him. Petitioner then, according to this testimony, held the officer while another person struck him, shouting "The stick, get the stick." The riot baton was removed from the officer's hands and, as he was losing control, he struck the petitioner in the face. The officer fell to the floor after other blows from an unidentified assailant. It appeared that the petitioner's action preceded any other courtroom commotion, but that immediately after the petitioner struck the policeman, the courtroom exploded. (360) [2]

## PROCEDURAL HISTORY

The state trial judge (not the judge conducting the Custer trials), after reviewing the evidence in petitioner's case, returned a verdict on December 15, 1975, finding petitioner not guilty of injury to a public building and guilty of rioting to obstruct. The trial court scheduled sentencing for December 31, 1975. On that day, the petitioner's motions for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial were denied. Petitioner was sentenced to serve a term of four years in the South Dakota State Penitentiary. On December 31, 1975, petitioner perfected a timely appeal to the South Dakota Supreme Court. The state supreme court unani-

---

**2.** As this Court has stated, there were conflicting views of what happened in the courtroom. Though this Court might have decided the conflicts differently, "the trial judge, as the ultimate fact finder in this case, was required to

determine which witnesses were to be believed and which, of all the evidence that was presented, was the most credible." *State v. Means,* *supra,* at 268 N.W.2d 818.

mously affirmed the conviction on June 20, 1978, and later denied a petition for rehearing.

■ The petitioner did not seek post-conviction review in the state system of the points he raised in this writ of habeas corpus. Such a review, however, is not required for this Court to consider his claims. *See Havens v. Solem,* 455 F.Supp. 1132 (D.S.D.1978); *Zemina v. Solem, supra.*[3] Therefore, I may examine the merits of petitioner's claims.[4]

■ My standard of review under 28 U.S.C. § 2254 is a determination whether " 'trial errors or irregularities infringe upon a special constitutional protection or are so prejudicial as to amount to a denial of due process.' " *Spratlin v. Solem, supra,* at 577 F.2d 58, *quoting Atwell v. State of Arkansas,* 426 F.2d 912, 915 (8th Cir. 1970). I will examine each of petitioner's claims according to this standard.

## PREJUDICIAL PRETRIAL PUBLICITY

■ This Court recognizes that the writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct.

1082, 22 L.Ed.2d 281 (1969). I have carefully scrutinized the state court record as required by *Townsend v. Sain,* 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *See Winford v. Swenson,* 517 F.2d 1114 (8th Cir. 1975), *cert. denied* 423 U.S. 1023, 96 S.Ct. 464, 46 L.Ed.2d 396 (1975).[5] "The state conclusions of law may not, [however,] be given *binding* weight on habeas". *Townsend v. Sain, supra* at 372 U.S. 318, at 83 S.Ct. 760 (Emphasis added).

■ Though this Court must review the entire record, it is not the purpose of habeas corpus proceedings to serve as an appeal from a criminal conviction. I cannot review all errors or omissions in trial procedure. Only errors constituting a denial of federal constitutionally protected rights are justiciable in this type of habeas corpus petition. *Utsler v. Erickson,* 440 F.2d 140 (8th Cir. 1971), *cert. denied* 404 U.S. 956, 92 S.Ct. 319, 30 L.Ed.2d 272 (1971). Therefore, my determinations have involved whether the record shows that the state court gave fair consideration to the issues and reached a result which protected the petitioner's federal constitutional rights. *Nolen v. Wilson,* 372 F.2d 15 (9th Cir. 1967), *cert. denied* 387 U.S. 948, 87 S.Ct. 2085, 18 L.Ed.2d 1337 (1967).

3. Petitioner argues to this Court that some federal constitutional questions were briefed before the South Dakota Supreme Court, although that court did not refer to the issues in its reported opinion. Regardless of my view on whether the issues were adequately addressed in the state supreme court opinion, I will consider them since they were "squarely raised in petitioner's brief in the state court." *Smith v. Digmon,* 434 U.S. 332, 333, 98 S.Ct. 597, 599, 54 L.Ed.2d 582 (1978).

4. This Court expresses no opinion on the question of discriminatory enforcement of the South Dakota statute. In response to a question from the Court at the August 10, 1978, hearing, counsel for the petitioner mentioned that, to his knowledge, only Indians had been convicted under the statute. This issue, however, was not raised by brief before the South Dakota Supreme Court and the South Dakota court opinion never addressed the issue. Further, the question has not been raised before this Court in the petition for habeas corpus and no evidence of such discriminatory enforcement

against Indians as a group has been presented. *See United States v. Wallace,* 578 F.2d 735, 740–1 (8th Cir. 1978). Therefore, I deem the issue not exhausted and reach no conclusions regarding it. 28 U.S.C. section 2254.

5. The only exception to a thorough scrutiny of the state court transcripts, pleadings, opinions and other pertinent documents by the Court considering the habeas petition is when the violations alleged are not of a constitutional magnitude. *Hill v. Wyrick,* 570 F.2d 748 (8th Cir. 1978). Some commentators have claimed that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), indicates that a state court determination of *all* federal constitutional issues is res judicata on habeas corpus. Cover & Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court,* 86 Yale L.J. 1035, 1076–77 (1977). This Court, however, feels that it can and must review petitioner's claims that allege violations of a constitutional magnitude.

■ At the outset, it is important to recognize that a trial judge has broad discretion in determining the proper course of action when faced with allegations of prejudicial pretrial publicity. *United States v. Collins,* 472 F.2d 1017 (5th Cir. 1972), *cert. denied* 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973). Each case turns on its own special facts when a court considers pretrial publicity and its effect on a trial. *United States v. Barrett,* 505 F.2d 1091 (7th Cir. 1974), *cert. denied* 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). It is the duty of the federal court to "make an independent evaluation of the circumstances [surrounding a claim of prejudicial pretrial publicity]." *Sheppard v. Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966).

Petitioner's claim here, however, presents a somewhat different issue than the typical prejudicial pretrial publicity claim since he moved for a court trial prior to the completion of *voir dire.* Petitioner had not exercised all of his peremptory challenges, nor had he requested a change of venue from Minnehaha County to any other county or circuit. All of these factors contribute to the totality of the circumstances surrounding petitioner's claims.

*Voir dire* was concluding when petitioner waived his jury trial. Twenty-eight jurors had been tentatively selected (albeit six over petitioner's objections). An examination of the *voir dire* to that point shows that certain veniremen [6] were excused for hearing problems (*Voir Dire* Transcript 1278, 2975), views that a lay person should not decide guilt (2547), various business reasons, hardship (2554, 2569, 2770, 2864, 3522, 3530, 3540, 4000, 4069, 4091, 4375), relationship with counsel (2940, 2962, 4659, 4112), a dislike of the court system (3441), a reaction to petitioner's use of out of state counsel (3517, 3990), relationship with witnesses (3768), health reasons (4368), a dislike of juror background investigations (2336, 3892, 4349), fear (2449), and reaction to the petitioner's press conferences prior to and during *voir dire* (2471, 2493, 2535).

During *voir dire,* counsel for petitioner stated that "we are not harboring any misplaced hope that we are going to find a jury in this case that don't have—that isn't composed of people that don't have some opinions about Russell Means." (1421) With such a statement, petitioner's counsel properly recognized the standard of *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961) that "to hold that the *mere existence* of *any* preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (emphasis added) *quoted in Calley v. Calloway,* 519 F.2d 184 (5th Cir. 1975), *cert. denied* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976).

In its opinion regarding this issue, the South Dakota Supreme Court ruled that the record did not support the view that a fair and impartial jury could not have been impanelled. *State v. Means, supra* at 268 N.W.2d 811. That court stated:

There is no dispute over [petitioner's] claim that the incident that occurred on April 30, 1974, outside and inside of the Minnehaha County Courthouse was highly publicized. There was extensive television coverage of the outside activity, as well as radio and newspaper coverage on both outside and inside events. The [petitioner] is a bold and articulate spokesman on behalf of the American Indian Movement (AIM). It was therefore not unusual for the media people to seek him out and press him for comments concerning the occurrences then unfolding in the Sioux Falls community. It is apparent that [petitioner] succumbed to such pressures at least twice by calling press conferences, the first one less than a month

---

6. A venireman is a prospective juror who must pass *voir dire* before becoming a juror.

before the trial, and the second one during *voir dire.*[7]

*Id.* at 810.

Before the South Dakota Supreme Court and this Court, petitioner urges that, notwithstanding issues raised regarding waiver, change of venue, and failure to exhaust peremptory challenges, cases such as *Sheppard v. Maxwell, supra; Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *United States v. Denno,* 313 F.2d 364 (2d Cir. 1963); and *Pamplin v. Mason,* 364 F.2d 1 (5th Cir. 1966), compel the conclusion that the demonstrated *voir dire* showed such inherently prejudicial exposure to pretrial publicity that petitioner was deprived of a fair trial. Urging that the level of community prejudice is the primary consideration, petitioner has pointed out that the state trial judge dismissed charges arising out of the same incident. *State v. Wabun Nuwi Nini, et al.,* State of S.Dak. 2d Cir., Cr. 74–91. Petitioner urges that the prior dismissal mandated a dismissal in his case. The state contends that the *Wabun Nuwi Nini* case merely involved persons charged with the disturbance outside the courthouse and not inside the courtroom. The state Supreme Court stated that *stare decisis* was not applicable and that the present case should not be dismissed on that ground. This Court, after a careful review of the *Wabun Nuwi Nini voir dire* transcript, does not find the facts of that case substantially similar to this case to the extent that failure to dismiss petitioner's case rises to a federal constitutional violation. Three months had passed since the prior dismissal. Petitioner cites no cases where a prior dismissal of a different case for impossibility to impanel a jury makes a subsequent court trial so tainted as to amount to a violation cognizable in a federal habeas corpus proceeding. The state Supreme Court pointed out that "(the trial judge) . . . determined that under the fact situation existent at the time of the *voir dire* examination in the second case, a fair and impartial jury could be selected as opposed to the situation. some three months earlier during the *voir dire* examination in the *Wabun Nuwi Nini* case." *State v. Means, supra,* at 268 N.W.2d 811–2.[8]

Petitioner further argues that the inherent prejudice theory requires a dismissal since petitioner was a "target of convenience" and the evidence of community prejudice was overwhelming. In reviewing this contention, I am mindful of Chief Justice Marshall's admonition in 1807 in Aaron Burr's trial:

> Light impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him.

7. Though these press conferences influenced some veniremen, as is shown by the record, such an influence alone could not persuade me to deny petitioner's claim of prejudicial pretrial publicity depriving him of his constitutionally mandated fair trial. I do note, however, the language of the Supreme Court in *Sheppard v. Maxwell, supra,* at 384 U.S. 363 at 86 S.Ct. 1522, that:

> The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, *the accused,* witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. (Emphasis added)

*Cf. United States ex rel. Parson v. Anderson,* 354 F.Supp. 1060 (D.Del.1972), aff'd 481 F.2d 94 (3d Cir. 1973), *cert. denied* 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973). (The court, in denying habeas corpus relief on the ground that pretrial publicity deprived petitioner of a fair trial, observed that the state had not generated the pretrial publicity).

8. *Cf. United States ex rel. Mayberry v. Yeager,* 321 F.Supp. 199 (D.N.J.1971) (petition for habeas corpus denied because petitioner's allegations of prejudicial pretrial publicity relating to *other* cases involving petitioner had no basis in record).

*United States v. Burr,* 25 F.Cas. 49, 51 (No. 14,692g) (C.C.D.Va.1807) *quoted with approval* in *Irvin v. Dowd, supra* at 366 U.S. 722, 81 S.Ct. 1639; *United States v. Morlang,* 531 F.2d 183, 187 (4th Cir. 1975).

In *Calley v. Calloway, supra,* the court denied habeas corpus after finding that the trial court used the means suggested by *Sheppard v. Maxwell, supra,* to ameliorate potential prejudice stemming from publicity. The court approved such methods as delay and extensive *voir dire* in concluding that Lieutenant Calley was not deprived of a fair trial. The court recognized the fact that modern communications technology reaches a number of people and exposes them to much of the pretrial criminal process. It stated:

If, in this age of instant, mass communication, we were to automatically disqualify persons who have heard about an alleged crime from serving as a juror, the inevitable result would be that truly heinous or notorious acts will go unpunished. The law does not prohibit the informed citizen from participating in the affairs of justice. In prominent cases of national concern, we cannot allow widespread publicity concerning these matters to paralyze our system of justice.

*Calley v. Calloway, supra* at 519 F.2d 210.

In the present case, over 4,700 pages of *voir dire* examination were allowed. Almost 16 months had elapsed since the incident. The trial court here similarly used the procedures advocated in *Sheppard.* Given my review of the *voir dire,* I cannot say that it established that petitioner could not get a fair trial. The Supreme Court recently stated in *Nebraska Press Association v. Stuart,* 427 U.S. 539, 565, 96 S.Ct. 2791, 2805, 49 L.Ed.2d 683 (1976), "(P)retrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." [9]

Further, it should be noted that the *voir dire* shows that many of the questions were in the abstract and tended to confuse the veniremen. Many veniremen (including the six approved over the petitioner's objection) expressed initial confusion over the questions. As the court pointed out in *United States ex rel. Parson v. Anderson, supra* at 354 F.Supp. 1081:

Abstract questions of this kind are difficult for a juror to understand and answer meaningfully. Moreover, they frequently produce responses which are a poor indicia of the manner in which the juror would evaluate any particular . . . testimony. This does not mean such questions are improper; it does mean that the trial court is entitled to weigh the responses in the light of the juror's demeanor and his responses to other questions.

Here, the trial judge was on the scene, and had an opportunity to observe the veniremen's demeanor. Twenty-two veniremen were passed for cause without objection. Another six were passed over petitioner's objection. I cannot say as a matter of federal constitutional law that such figures indicate that petitioner could not have received a fair jury trial. The fact that jury selection procedures took over one month indicates not that the panel was inherently prejudiced, but that the trial court was concerned under the *Sheppard* cautions that a full examination of the prospective panel be given. *See also United States v. Haldeman,* 181 U.S.App.D.C. 254, 559 F.2d 31 (1976), *cert. denied* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (upholding conviction for conspiracy and pointing out that extensive (2,000 page) *voir dire* given.). Additionally, in denying the writ of habeas corpus in *United States ex rel. Parson v. Anderson, supra,* the court stated that the kind of general hostility which might cast doubt upon the qualifications of those who served as jurors was not shown. My review of the *voir dire* in the present case likewise does not indicate the kind of hostility casting doubts upon the qualifications of the 28 jurors impanelled.

9. *See also Latham v. Crouse,* 330 F.2d 865 (4th Cir. 1964), *cert. denied* 379 U.S. 866, 85 S.Ct. 134, 13 L.Ed.2d 69 (1964) (denying writ of habeas corpus for failure of demonstrable showing of prejudice).

In this regard, this Court feels that the language in *McWilliams v. United States,* 394 F.2d 41 (8th Cir. 1968), *cert. denied* 393 U.S. 1044, 89 S.Ct. 643, 21 L.Ed.2d 593 (1969), and *United States v. Kelton,* 518 F.2d 531 (8th Cir. 1975), *cert. denied* 423 U.S. 1021, 96 S.Ct. 460, 46 L.Ed.2d 394 (1975), is applicable.

In *McWilliams,* the court pointed out "absent inherently prejudicial publicity which has so saturated the community as to have a probable impact upon the prospective jurors, there must be some showing of a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice.", *citing Malone v. Crouse,* 380 F.2d 741 (10th Cir. 1967), *cert. denied* 390 U.S. 968, 88 S.Ct. 1082, 19 L.Ed.2d 1174 (1968); *United States v. McElrath,* 377 F.2d 508 (6th Cir. 1967), *cert. denied* 395 U.S. 915, 89 S.Ct. 1764, 23 L.Ed.2d 229 (1969); *Welch v. United States,* 371 F.2d 287 (10th Cir. 1966), *cert. denied* 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966), at 394 F.2d 44.

The Eighth Circuit Court of Appeals in *Kelton, supra,* stated "this circuit has rejected 'the *per se* theory of implied bias' in favor of a requirement that actual prejudice be demonstrated." 518 F.2d at 533. I cannot say that such actual prejudice or such community saturation has been shown in the *voir dire* that I have examined.

Petitioner urges that *Kelton* is inapplicable since that case presented only the problem of one juror who personally knew the defendant. This Court, however, does not read *Kelton* so narrowly. The problem in *Kelton* was a post-conviction relief petitioner's allegation that his sixth amendment right to a fair and impartial trial was violated. In the present case, the petitioner's contention is the same. All of the cases I have cited stand for the proposition that in these circumstances, the petitioner's sixth amendment right to a fair trial was not violated.

Petitioner's reliance on *Estes, supra,* is misplaced. In that case, the precise question decided was whether "the 14th Amendment prohibits a state, over the objection of a defendant, from employing television in the courtroom to televise contemporaneously, or subsequently by means of videotape, the courtroom proceedings in a criminal trial of widespread public interest." 381 U.S. at 587, 85 S.Ct. at 1662 (Harlan, J., concurring). Indeed, the Supreme Court had excluded a question concerning *pretrial* publicity from its grant of certiorari. 381 U.S. at 609–10, 85 S.Ct. 1628 (Stewart, J., dissenting). Estes was subjected to nationwide notoriety and the television cameras in the courtroom not only lent to the atmosphere of notoriety [10] but also completely deprived the entire proceedings of the solemnity and sobriety inherent in a fair trial. The instant proceedings, on the other hand, were conducted not in a "circus" atmosphere but in a calm and dignified atmosphere.

The other cases cited by petitioner are likewise inapplicable. In *Irvin v. Dowd, supra,* eight of the 12 jurors finally impanelled thought that the defendant was guilty.[11] Here, by contrast, at least 22 prospective jurors were passed without objection by the petitioner. *Sheppard v. Maxwell, supra,* involved many blatant pretrial and trial publicity abuses. The most destructive pretrial televised event was a three day inquest prior to trial. Another outrage in *Sheppard* was the publication of the names of the prospective jurors, who subsequently received letters and calls

---

**10.** *E. g., United States ex rel. Clark v. Anderson,* 356 F.Supp. 445 (D.Del.1973), *rev'd on other grounds* 502 F.2d 1080 (3d Cir. 1974) (distinguishing *Estes* and denying writ of habeas corpus for petitioner convicted of embezzlement. The Third Circuit Court of Appeals subsequently reversed the District Court on the ground that the embezzlement statute was void for vagueness, but indicated that it was "satisfied that the record justified the district court's decision on the pretrial publicity issue." 502 F.2d 1080 (dicta)).

**11.** Further, in *Irvin,* 62% of the 430 member venire admitted possessing a *fixed* opinion as to guilt which could not be set aside. 366 U.S. at 724 & 727 n. 4, 81 S.Ct. 1639; *See United States v. Haldeman, supra* at 181 U.S.App.D.C. 293 n. 56, at 559 F.2d 70 n. 56.

about the case. In the present case, however, the state trial judge conducted the *voir dire* in the absence of press coverage, no names of veniremen passed for cause were published, and the *voir dire* and trial were both dignified and orderly.

In *Rideau v. Louisiana, supra,* three telecasts of the defendant admitting his guilt were seen by more than 100,000 viewers in the parish where the trial was held which had a total population of 150,000. Certainly, such blatant outrages against the guaranteed right of fair trial demand federal habeas corpus relief. The present case, however, is readily distinguishable from such "Roman holiday" cases. My examination of the *voir dire,* with appropriate weight given to the trial judge's interpretation of the demeanor of the veniremen, compels the conclusion that such an outrageous atmosphere did not exist in the present case.

As the court pointed out in denying a writ of habeas corpus in *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), in distinguishing *Irvin, Rideau, Estes* and *Sheppard* :

> The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob. They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process.[12]

Finally, petitioner urges this Court that *Pamplin v. Mason, supra,* constrains me to grant the writ of habeas corpus. I feel that, even were the Eighth Circuit to adopt the "inherent prejudice" theory of *Pamplin,*

that case is also distinguishable on its facts. In *Pamplin,* the court reversed a denial of change of venue in the trial of a Negro charged with assault on a police officer. The alleged assault was in connection with the defendant's leadership role in the first racial demonstration in a Southern community which had a population of less than 7,000. In the present case, the population of the area from which the prospective jury panel was to be drawn was almost 100,000. This factor requires a greater showing than was made in *Pamplin.* Such a showing was not made in the present case. In conclusion, I cannot say that my examination of the record indicates that the entire population was so permeated with prejudice that any panel must be presumed prejudiced.

In examining a state prisoner's habeas corpus claims that denial of a change of venue because of prejudicial pretrial publicity deprived the petitioner of due process, the Sixth Circuit has noted, "The standard against which the record herein must be measured is that of due process rather than the less stringent rules which apply in the exercise of supervisory powers in federal actions." *Collins v. Egeler,* 539 F.2d 597, 599 (6th Cir. 1976), *cert. denied* 429 U.S. 889, 97 S.Ct. 244, 50 L.Ed.2d 171 (1976), *citing Murphy v. Florida, supra,* 421 U.S. at 803, 95 S.Ct. 2031 (Burger, C. J., concurring). Though this Court might have conducted the proceedings somewhat differently, on this habeas corpus action my review is limited to violations of a constitutional magnitude. I conclude from the record before me that the petitioner was not denied due process or his right to a fair trial for all of the reasons set forth above.

Further, this Court must note that even if the veniremen questioned were seen to be prejudiced, in this case the petitioner failed to request a change of venue, failed to

---

12. The statistics alleged in the present case (Exhibit J to the Petition for Habeas Corpus) that 15% of the jurors were passed for cause compared to the total number of veniremen subjected to court and counsel-conducted *voir dire* with 48% excused for bias are strikingly similar to the *Murphy voir dire.* In *Murphy,* 78 jurors were questioned, 30 were excused for miscellaneous personal reasons, 20 were excused on peremptory challenge (in the instant case, not all peremptory challenges were exercised) and 20 were excused for bias, leaving a six-person panel with two alternates. The court found that such statistics, without more, were an insufficient indicia of prejudice to grant federal habeas corpus relief.

exercise all his peremptory challenges, and, most importantly, waived a jury trial. Each of these actions mollify the petitioner's claims, and I will examine them separately.

### a. Failure to Request Change of Venue

The Supreme Court, in denying habeas corpus relief in *Darcy v. Handy*, 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331 (1956), stated:

> Notwithstanding the fact that competent counsel for petitioner did not use all of his peremptory challenges after a searching examination of prospective jurors on *voir dire*, and did not seek a continuance of the trial or a change of venue, petitioner asks this Court, in effect, to infer that the news coverage of the robbery and proceedings prior to petitioner's trial . . . created such an atmosphere of prejudice and hysteria that it was impossible to draw a fair and impartial jury from the community or to hold a fair trial. The failure of petitioner's counsel to exhaust the means provided to prevent the drawing of an unfair trial jury from a community allegedly infected with hysteria and prejudice against petitioner, while not dispositive, is significant.

*See also Stroble v. California*, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 (1952).

 This Court recognizes that petitioner's failure to request a change of venue is not dispositive of the issue, but does agree that it is somewhat significant.[13] While I

acknowledge that there is no constitutional requirement to move for a change of venue, *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952), it is a factor to be considered.

In *Pamplin v. Mason, supra*, the court pointed out that the petitioner moved for a change of venue and also exhausted his peremptory challenges, doing everything in his power to secure relief in the state courts. Additionally, in *United States v. Denno*, 313 F.2d 364 (2d Cir. 1963), another holding urged by petitioner to support the "inherent prejudice" theory, a change of venue was requested by counsel.[14]

Finally, in *United States v. Halfen*, 467 F.2d 127, 128 (5th Cir. 1972) (*per curiam*), the court upheld a conviction, in part because allegations that prejudicial publicity tainted the defendant's trial by compelling him to waive his right to a jury trial were not accompanied by a motion for a change of venue. As I have stated, the failure to move for a change of venue is not dispositive of petitioner's claim, but I find it of some import in viewing the totality of the circumstances.

### b. Failure to Exhaust Peremptory Challenges

Though not affording it great weight, I must also observe that there is some significance to the petitioner's failure to exhaust peremptory challenges. In *Mastrian v. McManus*, 554 F.2d 813 (8th Cir. 1977), *cert. denied* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977), the court affirmed a

---

13. Petitioner states that his removal petition before this Court, which was heard on September 5, 1975, and dismissed as premature at that time, amounted to a request for a change of venue. *Russell Means v. Minnehaha County States Attorney, South Dakota, Richard Braithwaite, and State of South Dakota*, (D.S.D.) CIV75–4059. Because of my disposition on the merits, I do not reach this question. I do, however, recognize that at the time I ruled the removal petition was premature, jury selection had progressed for only a short time. The petitioner did not thereafter renew his motion.

14. The three dissenters in *Denno* also pointed out that the defense had welcomed and added to the publicity surrounding the case. "Having embarked on a publicity campaign, the defense

should not now be heard to complain of a violation of constitutional rights because its strategy failed." 313 F.2d at 378 (Lumbard, C. J., dissenting); *See* n. 7, *supra*. In *Denno*, "the pretrial publicity labeled the defendant as the 'Mad Killer' who had terrorized the community by committing three senseless murders; his confession was published in the papers, along with the District Attorney's opinion that he had to 'get the chair'; and the newspapers intimated that, were the defendant found not guilty by reason of insanity he 'would be free—perhaps to kill again' " *U. S. v. Addonizio*, 451 F.2d 49, 66 n. 22 (3d Cir. 1972), *cert. denied* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). The publicity in the present case did not rise to such a flagrant constitutional violation.

denial of habeas corpus because pretrial publicity did not deprive the petitioner of his right to a fair trial. The court stated, "Moreover, we think it of some import that Mastrian's counsel did not exercise all of his peremptory challenges during *voir dire.*" *Id.* at 554 F.2d 818. *See also Darcy v. Handy, supra; contra, Delaney v. United States, supra.*

### c. Waiver of Jury Trial

[9, 10] Finally, I must note that the petitioner waived his right to a jury trial. Now, he urges this Court that pretrial publicity compelled his waiver.[15] The trial judge, however, is presumed not to be influenced by such publicity. Further, the state trial judge emphatically declared, "I read no newspapers and watched no T.V. news broadcasts at all until after the verdict or two verdicts were rendered by the court at the conclusion of the evidence-taking portion of the trial. And so any publicity to which the court was subjected in the various news media the court was subjected to prior to the time that I became the trier of fact and the extent of that publicity was known by the defendant at that time." (Sentencing and Bail Bond Hearing Transcript 4)

In *Austin v. Peyton,* 279 F.Supp. 227 (W.D.Va.1968), the court faced a similar question in denying habeas corpus for a petitioner convicted in state court of rob-

bery, burglary, grand larceny, and abduction. The state trial court denied a motion for change of venue on the grounds of prejudicial pretrial publicity. Before *voir dire* commenced,[16] the petitioner waived his right of trial by jury and the case was tried to the court. The district court found no evidence of improper behavior of the state trial court. Further, the court stated:

> Petitioner claims that the denial of his motion for a change of venue denied him the right of trial by jury. He contends that because an impartial panel could not have been obtained from the area where the trial was held, he had no choice but to waive jury trial after his motion was denied to avoid being tried by a prejudiced jury. Thus, he says the waiver was involuntary. The court finds no merit in this contention. The petitioner may not be heard to say that his waiver of his right to a jury trial was involuntary where open and free alternatives were available to him. He simply could have accepted a trial by jury and then presented his claim of an unfair trial to the courts via appeal and habeas corpus, state and federal. Petitioner was not denied the right of trial by jury or coerced into waiving that right in view of the remedies available to him.

*Id.* at 279 F.Supp. 229.[17]

Here, petitioner also failed to utilize the remedies available to him. He waived his

---

**15.** In one habeas corpus case, the Fourth Circuit Court of Appeals analyzed a claim that waiver of a jury trial was illegally coerced by the petitioner's fear that a trial before a jury selected under Virginia law would result in the imposition of a death sentence. The court held the waiver voluntary, because, *inter alia,* the petitioner was represented by able and experienced trial counsel. The court's analysis equated the rationale upholding a guilty plea in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), with the rationale analyzing a waiver of a jury trial. The court stated, "we perceive no distinction between *Brady* and the case before us. In both cases, the defendant was waiving a jury trial—in *Brady* by his guilty plea, in this case by his express waiver." *Brickhouse v. Zahradnick,* 553 F.2d 340, 342 (4th Cir. 1977), *cert. denied* 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297. (Both cases involved the imposition of the death penalty).

This Court, however, cannot equate the guilty plea rationale with waiver of a jury trial. To do so would be to assume that any waiver of a jury trial would result in a guilty verdict by a judge. The record before me shows that the state trial judge found the petitioner not guilty on one of the charges. I do note, however, that in the present case as in *Brickhouse,* the petitioner was represented by able and experienced counsel when he exercised his waiver of a jury trial.

**16.** In the present case, an extensive *voir dire* was taken, with 22 veniremen passed for cause without objection.

**17.** *Cf. Goodman v. Swenson,* 192 F.2d 669 (4th Cir. 1971) (denial of writ of habeas corpus after finding that petitioner had been represented by competent counsel at his trial and with counsel present had waived jury trial in accordance

jury trial and now complains that such waiver was involuntary. From my view of the record, I conclude that the waiver was not involuntary and that petitioner cannot prevail on this petition on the grounds that prejudicial pretrial publicity deprived him of his right to a fair trial.

For all of the reasons set forth above, I am of the opinion that, even if this Court would adopt the "inherent prejudice" theory, such prejudice has not been shown. Furthermore, even if public prejudice had been shown, petitioner voluntarily waived his right to the jury trial and thereby was not prejudiced. I also attach some weight to the failure of petitioner to request a change of venue or exhaust his peremptory challenges. The totality of the circumstances persuades me that I cannot grant the writ of habeas corpus on the basis of prejudicial pretrial publicity.

## THE CONSTITUTIONALITY OF S.D.C.L. 22–10–1 AND 22–10–4

Petitioner further alleges that S.D.C.L. 22–10–1 [18] and 22–10–4 [19] are unconstitutional, particularly as applied to him. Petitioner urges that S.D.C.L. 22–10–4 is void because of its failure to require any showing of criminal intent, its vagueness, overbreadth, and potential for infringement upon the rights of free speech and assembly. Specifically, as applied to him, peti-

tioner pleads that there is no credible basis for inferring that his presence in the courtroom violated 22–10–4 and amounted to anything more than participating in a peaceful assembly petitioning the government for redress of grievances and exercising rights of free speech and assembly.

This Court has made an examination of the entire record. *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). I will address petitioner's claims from that foundation.

The South Dakota Supreme Court, in reviewing these claims, held that:

1. The necessary criminal intent to commit the crime of riot may be inferred from all the facts and circumstances surrounding the commission of the offense. And that where there is an essential element of the crime, but is not made so by express statutory language, it will be implied.

2. The riot statutes give fair notice to a person of ordinary intelligence that certain specific conduct is prohibited, and are therefore not constitutionally infirm by reason of vagueness or overbreadth.

3. That the riot statutes prohibit certain defined conduct, rather than forms of expression, and therefore they do not violate the constitutional rights of free ex-

with Maryland practice); *United States v. Morlang, supra,* (no error in refusing defendant's motion to be tried without jury because of prejudicial pretrial publicity); *United States v. Daniels,* 282 F.Supp. 360 (N.D.Ill.1968) (denial of motion to waive jury trial because of prejudicial pretrial publicity).

18. S.D.C.L. 22–10–1 defines "riot" as follows: Any use of force or violence or any threat to use force or violence if accompanied by immediate power of execution by three or more persons acting together and without authority of law, is riot.

19. S.D.C.L. 22–10–4 used to provide: If the purpose of a riotous assembly was to resist the execution of any statute of this state or of the United States or to obstruct any public officer of this state or of the United States, in the performance of any legal duty, or in serving or executing any legal process, every person guilty of participating in the assembly is punishable by imprison-

ment in the state penitentiary not exceeding ten years and not less than two years. Petitioner points out that this statute has been repealed by the South Dakota legislature. I attach no significance to the legislature's repeal. It has been recognized "because (invalidation of a statute through legislative repeal) has traditionally been considered prospective in nature, it does not seem unjust to deny collateral, relief to a petitioner who has violated a law before its repeal. In essence, such a law was still valid when violated." Comment, *Criminal Procedure: Intervening Change in Law Voiding Regulation under which Petitioner is Convicted held Cognizable in Collateral Proceedings,* 59 Minn.L.Rev. 633, 640 n. 46 (1975). Though the legislative repeal has no significance, if the statute was unconstitutional either on its face or in its application, I must take cognizance of this unconstitutionality on this petition for habeas corpus.

pression and assembly, as those rights end when violence begins.

*State v. Means, supra,* at 268 N.W.2d 808.

Further, the state Supreme Court found that petitioner knew about the state trial judge's order to have those who would not stand in the courtroom removed, but stated "I must sit with my people." The court quoted *United States v. Snider,* 502 F.2d 645, 664–665 (4th Cir. 1974):

> Justice is badly served by encouraging a flagrant and deliberate disregard of the lawful order of a judge in his own courtroom. Each person, whether he be litigant, lawyer, or spectator, so long as he is in a courtroom, may be required to yield the expression of so much of his beliefs as not to interfere with the administration of justice. It is not possible in this land of ordered liberty for all of the thousand beliefs to be expressed on each occasion. The expression by word or deed of the private convictions of the Sniders, although they may be deeply held, should yield, during the trial, to the imperative need of the community in having an established forum in which controversies between man and man and citizen and sovereign may be decided in a calm, detached, and neutral atmosphere.

*Id.* at 268 N.W.2d 809. The court emphasized the orderly processes of justice and the duty of the trial judge to conduct a fair and orderly trial.

█ The traditional grounds for vagueness of statutes purporting to restrict conduct colorably within first amendment protections have been (1) the law fails to give fair notice to persons potentially subject to it; (2) the law fails to guard adequately against arbitrary and discriminatory enforcement; or (3) the law fails to provide sufficient "breathing space" for first amendment rights. *McKinney v. Parsons,* 513 F.2d 264, 269–70 (5th Cir. 1975), *cert. denied* 423 U.S. 960, 96 S.Ct. 376, 46 L.Ed.2d

289 (1975) (denying writ of habeas corpus because statute was not vague).

Petitioner's exhausted claims[20] in this matter are relative to grounds (1) and (3). Petitioner advocates that because he was attempting to exercise first amendment rights, *United States v. Dellinger,* 472 F.2d 340 (7th Cir. 1972), *cert. denied* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), mandates that the statute does not give sufficient "breathing space" to petitioner's first amendment rights. (ground (3)). Petitioner further states that "riotous assembly" is so vague that fair notice is not given to a person who might be convicted of the statute. (ground (1)).

As to ground (1), it has been acknowledged that "the root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide a fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

█ Further, reading the riot statutes together, this Court must agree that a person would know that planning with a group to take action inside and outside the courthouse and telling them that the action, including throwing debris at the courthouse, was to begin when a window was broken out of the courtroom would violate the statute. (Trial Transcript 340 *et seq.*) A person with this prior plan who knew that the court had ordered all those who did not stand to be removed,[21] but who nevertheless refused to stand and hit a police officer to precipitate the courtroom conflict, must know that such conduct would violate the statute.

20. *See* n. 4, *supra.*

21. I do not pass upon the appropriateness of the trial judge's order. The fact is that the order was given, and, as the state Supreme Court pointed out, the trial judge has the inherent power, as well as a duty, to conduct a fair and orderly trial. *United States ex rel. Robson v. Malone,* 412 F.2d 848 (7th Cir. 1969); *Comstock v. United States,* 419 F.2d 1128 (9th Cir. 1969).

 Though petitioner argues that the statute fails to provide "breathing space" for his first amendment rights, it is obvious that speech is not protected when it is the very vehicle of the crime itself. *See United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970); *James v. West Virginia Board of Regents*, 322 F.Supp. 217 (D.W. Va.1971), *aff'd* 448 F.2d 785 (4th Cir. 1971).

 Petitioner alleges that his view of the facts (supported by many defense witnesses) shows that he did not have the requisite criminal intent to violate the statute. Thus, he claims, the application of the statute to him violated his constitutional rights.

Even though I might disagree with the state trial judge's analysis of the evidence, as long as there was conflicting testimony, I have no right to impose my view of the facts from the bare transcript. The trial judge was the factfinder. He observed the demeanor of the witnesses. In *LeDent v. Wolff*, 460 F.2d 1001 (8th Cir. 1972), the court held that where the evidence conflicted on the issue of entrapment in a state court prosecution, the matter was foreclosed for collateral attack by way of federal habeas corpus. In *Cunha v. Brewer*, 511 F.2d 894, 898 (8th Cir. 1975), *cert. denied* 423 U.S. 857, 96 S.Ct. 108, 46 L.Ed.2d 83 (1975), the court stated:

> It is settled law that the sufficiency of the evidence to support a state conviction raises no federal constitutional question and cannot be considered in a federal habeas corpus proceeding by a state prisoner . . . Consequently, federal habeas relief under section 2254 is available to the state prisoner only if there is *no* evidence whatever supporting the conviction.

*See White v. Wyrick*, 530 F.2d 818 (8th Cir. 1976); *Hendricks v. Swenson*, 456 F.2d 503 (8th Cir. 1972).

I cannot say that the determination that petitioner's conduct indicated criminal intent to violate the riot statute was so *totally* devoid of evidentiary support as to raise a due process issue.

Because of these considerations, I find that S.D.C.L. 22–10–4, both on its face and as applied to petitioner, was constitutional. The statute in this case gave adequate protection to petitioner's first amendment rights and was not vague.

The cases urged by petitioner are inapposite. In *Edwards v. South Carolina, supra*, no violence resulted from the conduct. In fact, the *Edwards* court distinguished the situation before it from cases of violence or threat of violence. The situation was the same in *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Here, by contrast, violent activity was planned and resulted.[22]

For these reasons, I feel I must deny the petitioner's claim that the statute was unconstitutional.

## WITHDRAWAL AND RESIGNATION OF SIDNEY STRANGE

 One day before the trial was to begin, the state moved for permission to add Kenneth Dahl as a prosecution witness. Mr. Dahl had been a defendant on trial in the courtroom on April 30, 1974. Mr. Strange, one of petitioner's counsel, had been appointed to represent him on appeal from a conviction. Mr. Strange represented Dahl from August of 1974 until December of 1974.

---

22. The Supreme Court also recently recognized that *Shuttlesworth v. Birmingham*, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), and *Cox v. Louisiana, supra*, "involved regulations that permitted public officials in their arbitrary discretion to impose prior restraints on expressional or associational activities." *Nixon v. Administrator of General Services*, 433 U.S. 425, 467 n. 29, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977). Here, the regulation speaks of violence and certainly the conduct punished does not fall within the protection of the first amendment. *See Abernathy v. Conroy*, 429 F.2d 1170, 1176 (4th Cir. 1970), where the court stated:

> it is axiomatic that violent acts are not accorded protection under the First Amendment, even though they also constitute expressive or communicative conduct. Moreover, it is self-evident that the state has a legitimate interest in protecting the persons and property of its whole citizenry from the violence of a few.

Since Dahl was to be a prosecution witness, Strange determined that it would be impossible for him to effectively cross-examine Dahl due to the prior attorney-client relationship between Dahl and Strange. The attorney-client relationship was terminated prior to Strange's appointment to serve as petitioner's counsel in the present case. An extensive examination of Mr. Dahl concerning his apparent intention to waive the attorney-client privilege was conducted by the trial judge. The waiver was determined to be effectuated.

Nonetheless, Mr. Strange moved to be relieved as counsel[23] and petitioner attempted to discharge Mr. Strange because Mr. Strange might be called as a rebuttal witness. Both attempts were denied by the trial court.

The state Supreme Court stated, "the difficulty here is that other than defendant's bald conclusory statement that he was prejudiced, there was nothing in the record to support such a claim." *State v. Means, supra* at 268 N.W.2d 814. The court suggested that an offer of proof should have been made.

Petitioner argues before this Court that his constitutional rights to effective assistance of counsel were violated by the state trial court's action. I cannot agree.

Courts analyzing this problem have pointed to certain factors to be considered relative to a possible conflict of interest. For example, in *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975), *cert. denied* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1975), the court stated that two factors might arguably interfere with cross-examination and effective assistance of counsel: (1) a lawyer's pecuniary interest in future business with the client; or (2) the possibility that privileged information obtained from the witness might be relevant to cross-examination. Here the first issue is not relevant because of the presumption that "the lawyer will subordinate his pecuniary interests and honor his primary professional responsibilities to his client." *Id.* at 520 F.2d 1265. The record before this Court is certainly consistent with such a presumption. The second factor is also inapplicable since Mr. Dahl waived the attorney-client privilege. A final factor cited by the *Jeffers* court in denying a motion to withdraw as counsel which is also applicable to the present situation is failure to indicate to the trial judge the nature of the confidential information the attorney claimed to possess.[24]

A consideration cited by the court in upholding a conviction in *United States v. Donatelli*, 484 F.2d 505 (1st Cir. 1973), was the fact that the trial transcript revealed that the defendant's attorney conducted a vigorous cross-examination. The court stated, "while this factor alone would not be determinative, it takes on added significance when combined with the fact that defendant's attorney at no time indicated that a particular avenue of interrogation was closed to him or that he was deterred in any way from adequately representing his client by virtue of privileged information in his possession." *Id.* at 484 F.2d 507. In the present case, an extremely vigorous cross-examination was conducted. Further, Mr. Strange failed to indicate the specific difficulties he was having or the avenue of interrogation closed to him. Again, it appears that petitioner's claim must fall. *See also Olshen v. McMann*, 378 F.2d 993 (2d Cir. 1967), *cert. denied* 389 U.S. 874, 88 S.Ct. 165, 19 L.Ed.2d 157 (1967) (denying habeas corpus since petitioner's counsel vigorously cross-examined witness and the attorney-client privilege was waived); *Harrison v. United States*, 387 F.2d 614 (5th Cir. 1968)

---

**23.** (With a corresponding continuance to appoint new counsel implicit in the claim). This motion was made after the petitioner had waived a jury trial, so the continuance request implicit in the motion does not ameliorate the difficulties with petitioner's pretrial publicity claim, *supra*.

**24.** *See Ingram v. Cox*, 321 F.Supp. 90, 92 (W.D. Va.1970), where the court, in denying a petition for habeas corpus, recognized: "There is nothing alleged to indicate any real reason why the attorney could not effectively represent the petitioner except for the bald allegation that the request indicated an obvious conflict of interest."

(upholding defendant's conviction since there was no clear and specific showing of prejudice made to the trial court).

The cases cited by petitioner are readily distinguishable. In *United States v. Riley*, 332 F.Supp. 831 (D.R.I.1971), following their indictment, the defendants had engaged an attorney to represent them. Subsequently, they discharged their attorney on pain of retaliation by a co-defendant if they failed to do so. Their co-defendant then forced them to employ *his* (the co-defendant's) attorney. The court held that under such facts the defendants were denied their right to counsel.

In the present case, such a rationale is not applicable. Here, the issue is whether an alleged conflict of interest deprived the petitioner of his right to counsel. Because of the factors and decisions cited above, I conclude that I must deny petitioner's claim in this regard.

 Finally, I feel constrained to point out that even if this Court would accept the bald assertions that Mr. Strange could have provided impeachment evidence *if allowed* to resign and be called as a rebuttal witness, exclusion of such evidence is not cognizable in a federal habeas corpus proceeding. The Eighth Circuit Court of Appeals in approving a denial of habeas corpus has held that a claimed error in excluding evidence offered for purposes of impeaching a prosecution witness was not of sufficient constitutional magnitude to be cognizable in a federal habeas corpus proceeding. *Hughes v. Swenson*, 452 F.2d 866 (8th Cir. 1971). The Court stated, "It is only where the trial errors or irregularities infringe upon constitutional protections or are so prejudicial as to amount to a denial of due process that the federal courts should intervene and grant relief." *Id.* at 452 F.2d 868. My study of the record convinces me that the claimed error does not have constitu-

tional dimensions and was correctly decided by the state court. Therefore, I must deny petitioner's claim in this regard.

## FAILURE TO MAKE FINDINGS

 Petitioner complains that the trial judge failed to make findings of fact. Therefore, he infers that no consideration was given to his proffered defenses of self-defense and defense of others, thereby denying him due process. Petitioner urges that findings must accompany the court's verdict so the appellate court will know the precise reasons for the decision. The state Supreme Court concluded that the only state presently requiring written findings of fact by a judge sitting without a jury in criminal cases is Michigan. *People v. Jackson*, 391 Mich. 323, 217 N.W.2d 22 (1974), *cited in State v. Means, supra*, at 268 N.W.2d 819. The court stated that petitioner neither filed his own findings nor requested that findings be entered by the state trial court.

I do not reach the question of the validity of the inference that failure to file findings indicates that petitioner's defenses were not even considered by the state court. From my analysis of the record, I have determined that the state trial judge impliedly found the material facts and rejected the petitioner's defenses. "If the state court did not make *express* findings of fact, the district court may determine whether the state court impliedly found material facts." *Dempsey v. Wainwright*, 471 F.2d 604, 606 (5th Cir. 1973), *cert. denied* 411 U.S. 968, 93 S.Ct. 2158, 36 L.Ed.2d 690 (1973) (denying habeas corpus); *see Farmer v. Caldwell*, 476 F.2d 22 (5th Cir. 1973), *cert. denied* 414 U.S. 868, 94 S.Ct. 178, 38 L.Ed.2d 117 (1973) (denying habeas corpus); *see also Lamb v. Zahradnick*, 452 F.Supp. 372 (E.D.Va. 1978).[25]

---

**25.** Indeed, the court in *Leventhal v. Gavin*, 390 F.Supp. 197, 199 (D.Mass.1968), *aff'd* 421 F.2d 270 (1st Cir. 1970), *cert. denied* 398 U.S. 941, 90 S.Ct. 1857, 26 L.Ed.2d 277 (1970), held that although the state trial judge made no formal findings, such are not required by the state court judge under section 2254. *See also*

*Swain v. Pressley*, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977), where the court stated: elected judges of our state courts are fully competent to decide federal constitutional issues, and . . . their decisions must be respected by federal district judges in processing habeas corpus applications pursuant

The Eighth Circuit Court of Appeals affirmed a denial of habeas corpus in *Winford v. Swenson*, 517 F.2d 1114, 1118 (8th Cir. 1975), *cert. denied* 423 U.S. 1023, 96 S.Ct. 464, 46 L.Ed.2d 396 (1975), declaring, "Nevertheless, *Townsend (supra)* expressly recognizes that the federal courts sitting in habeas corpus may, in the absence of a clear expression by the state court, reconstruct implied findings of fact and interpolate the constitutional criteria applied."

This is not a case like *United States ex rel. Rigsbee v. Parkinson*, 407 F.Supp. 1019 (D.S.D.1976), *aff'd* 545 F.2d 56 (8th Cir. 1976), where neither the trial judge nor the state appellate court addressed the issues relevant to a determination of violation of the statute. Here, the central reconstruction of findings was the determination that the statute was violated. That determination was made by the state appellate court. This Court, after a thorough review of the complete record, has also made a determination of the factual findings implied in the verdict of guilty rendered by the state trial judge. Accordingly, I do not feel that the failure of the state trial judge to make written findings of fact necessitates habeas corpus relief.[26]

■■■ Finally, I address petitioner's argument that the totality of the circumstances show that his due process rights were violated and mandate habeas corpus relief. *Zemina v. Solem, supra.* In *Zemina*, I concluded that grievous errors in prosecutorial final arguments to the jury and instructions to the jury had the total effect of tainting the trial and denying due process. In the present case, the trial judge was the factfinder. There were no jury instructions. There were no grievous errors in prosecutorial argument to the jury. Indeed, I have found there were no constitutional errors requiring habeas corpus relief in the entire proceedings. For all of the reasons set

forth in this opinion, I must deny petitioner's claims that the totality of the circumstances mandates habeas corpus relief.

## CONCLUSION

After a thorough review of the voluminous record in this case, I am convinced that petitioner's trial was conducted in a manner consistent with the United States Constitution. His conviction, accordingly, is valid. *Moore v. Illinois*, 408 U.S. 786, 800, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

The above shall constitute the Court's findings of fact and conclusions of law. The petition for a Writ of Habeas Corpus is denied, and counsel for the respondent is directed to prepare an appropriate order.

Done and entered at Sioux Falls, South Dakota, this 29th day of September, 1978.

---

to 28 U.S.C. section 2254. Normally, a state judge's resolution of a factual issue will be presumed to be correct unless the factfinding procedure employed by the state court was not adequate.

*Id.* at 430 U.S. 383, at 97 S.Ct. 1231.

**26.** The state also points out that no request for written findings was made and that even the

Federal Rules of Criminal Procedure do not require findings unless there is a specific request to the court. *See* Fed.R.Crim.P. 23(c). From my review of the record, I can find no specific request made, although petitioner's counsel has represented that he made such a request. Because of my disposition on the merits of this case, I do not reach this question.