# Richmond

ROBERT C. FALDEN *v.* COMMONWEALTH OF VIRGINIA.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*Carter & Williams* and *Margaret L. Carter*, for the plaintiff in error.

*Abram P. Staples, Attorney-General*, and *Ralph H. Ferrell, Jr., Special Assistant*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The purported indictment upon which the accused was arraigned, tried and convicted reads as follows:
"Commonwealth of Virginia,
    "City of Danville, To-Wit:
    "In the Corporation Court of Danville.
    "The Jurors of the Commonwealth of Virginia, in and for the body of the City of Danville, and now attending said Court at its November term, in the year 1935, upon their oaths present that Eva Harris, Roland Wilburn Averett and Robert Cornelius Falden on the —— day of October in the year 1935, in said City, Unlawfully and feloniously combine, conspire and confederate together for the purpose of robbing a certain United States mail truck, in the city aforesaid, against the peace and dignity of the Commonwealth."
    The punishment of the accused was fixed by the jury at three years' confinement in the penitentiary. Eva Harris and Roland Averett, as shown by the endorsement upon the back of the purported indictment, plead guilty and received a ten-year suspended sentence.
    In the main, it was upon the evidence of Eva Harris and Roland Averett that the Commonwealth relied for a conviction of the accused.
    Before the entry of a plea of not guilty, the accused filed a plea in bar of the pending indictment. The plea alleged that on the 15th day of January, 1936, the accused was convicted of "an attempt to commit the crime of robbery upon one Henry C. Morris, by the presentation of a deadly weapon for the purpose of robbing the said Morris of United States currency of the value of $......, and one lot of United States

mail of unknown value." The plea then further alleged that the conspiracy with which he is now charged is in fact and truth a conspiracy to commit the identical robbery for which attempt he has already been convicted.

The court rejected the plea and this action is assigned as error.

In view of our ultimate conclusion, it is unnecessary to consider this assignment of error.

The charge against the accused is predicated upon section 4483b of the Code. That section provides:

"If any person shall conspire or confederate or combine with another in the Commonwealth of Virginia to murder, rape, rob or kidnap any person or to burglarize or to break and enter or to maliciously burn any building, either within or without the Commonwealth of Virginia, he shall be guilty of a felony and shall be confined in the penitentiary for a period of not less than one nor more than ten years."

The second assignment of error is that the evidence is not sufficient to sustain a conviction.

In the brief of the attorney-general it is said: "One cannot fail to state, after reading the record, that the testimony of the witnesses is very contradictory."

In our opinion, the evidence of the two witnesses for the Commonwealth, as shown by the record, is not only contradictory but insufficient to warrant a conviction of the accused. Both of them stated that no actual agreement to commit an offense was ever entered into by them and the accused. To constitute the crime of conspiracy there must be an agreement to commit an offense.

▐▐ The accepted definition of conspiracy is: "Conspiracy is an agreement between two or more persons by some concerted action to commit an offense * * *." Minor's Synopsis of Crimes and Punishment, page 160.

█ Of course it follows that if the Commonwealth has failed to prove an agreement to commit an offense which is properly charged in the indictment, the prosecution falls of its own weight. The result of this conclusion would ordinarily lead to a reversal of the judgment and a remand of the case

to the lower court for a new trial. But a more serious question confronts us than a reversal of the judgment. Though the question is not raised by counsel for the accused, we feel impelled, by reason of the decisions of this court and the gravity of the situation which confronts the accused, to raise the question as to the validity of the indictment upon which the accused has been tried and convicted. That it is our duty to do so is declared in *Old* v. *Commonwealth*, 18 Gratt. (59 Va.) 915. In that case Judge Moncure said: "I take it to be a true rule of law, that wherever the facts stated in an indictment or other accusation may all be true, and yet the accused not be guilty of the offense intended to be charged against him, he cannot be thereon lawfully convicted of such offense; and that, I think I have shown, is the case here."

In *Randall* v. *Commonwealth*, 24 Gratt. (65 Va.) 644, it was held that when the indictment is fatally defective the judgment may be reversed by the appellate court, though no motion in arrest of judgment was made in the lower court. To the same effect is our holding in *Matthews* v. *Commonwealth* and *Garner* v. *Commonwealth*, 18 Gratt. (59 Va.) 989; *Rose's Case*, 116 Va. 1023, 1027, 82 S. E. 699.

The fatal defect in the indictment is that it does not charge a crime. The offense which was intended to be charged was robbery. The alleged offense charged is a conspiracy entered into between the accused and others for the purpose of *robbing* a certain United States mail truck.

There is in Virginia no such crime as statutory robbery. In Davis's Criminal Law, page 199, robbery is defined as "the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence or putting him in fear." From this definition it is manifest that robbery is a crime against the person. In other words, before the crime is complete it must appear that the property was taken into possession by the robber; that the taking was with felonious intent; that the property was taken from the person or in the presence of the actual or constructive owner; that it was against the will of the owner;

finally, it was taken from the owner by violence or by putting him in fear.

In *Maxwell* v. *Commonwealth*, 165 Va. 860, 183 S. E. 452, 456, this court held that in order to constitute the crime of robbery in Virginia, all of the elements essential at common law must exist, and quoted with approval from *Houston* v. *Commonwealth*, 87 Va. 257, 12 S. E. 385, 387, as follows:

"To constitute this offense, there must be, 1st, violence; but it need only be slight, for anything which calls out resistance is sufficient; or, what will answer in place of actual violence, there must be such demonstrations as to put the person robbed in fear. The demonstrations of fear must be of a physical nature, with the single exception, that, if one parts with his goods through fear of a threatened charge of sodomy, the taking is robbery. There must, therefore, be, 2d, a larceny, embracing the same elements as a simple larceny; and, 3d, the taking must be from what is technically called 'the person;' the meaning of which expression is, not that it must necessarily be from the actual contact of the person, but it is sufficient if it is from the personal protection and presence."

It is unnecessary to emphasize the fact that the truck referred to in the alleged indictment was an inanimate thing, and therefore, incapable of being *robbed*.

Section 4405 of the Code is silent on the elements of robbery and merely provides how the crime, when committed under given circumstances, shall be punished. However, when we look to section 4483b of the Code, under which accused is being prosecuted, we find that before the accused can be convicted he must have conspired *to rob a person*.

The enactment of section 4439, Michie's Code, clearly shows that it has never been the intention of the Legislature to enlarge, decrease or change the common law crime of robbery. Recognizing the doctrine that robbery is a crime against the person, and not against a house or other inanimate thing, the Legislature passed the act of 1928 (now section 4439), which provides:

"\* \* \* If any person, armed with a deadly weapon shall enter any banking house, in the day time or in the night time, with intent *to commit larceny* of money, bonds, notes, or other evidence of debt therein, he shall be punished with death, or by confinement in the penitentiary for life, or for any term not less than five years." (Italics added.)

It is to be observed that all of the elements of robbery have been omitted from the section and the crime is complete when a person armed with a deadly weapon enters a banking house, in the day time or in the night time, with intent to commit larceny, etc.

For the reasons stated, the judgment will be reversed and annulled and the case is remanded to the trial court with the direction that the indictment now pending against the accused be dismissed.

*Reversed.*

GREGORY, J., dissenting.

I cannot concur in the opinion of the majority because even if the indictment is faulty the accused entered his plea of not guilty, sat by and without calling for a bill of particulars or interposing a demurrer, acquiesced in the trial without any protest whatsoever. He does not now and never has claimed that the indictment is void. If he had seasonably made such claim, no doubt the trial court would have considered the point and most likely would have permitted the indictment to be amended or it might have impanelled a grand jury and a new indictment might have been found. If the accused ever had a right to attack the validity of the indictment he should have exercised that right in the court below.

The accused has been represented by able and vigilant counsel and he has never raised any question of the validity of the indictment and I do not think that this court of its own motion should now interpose an objection thereto for the accused and dismiss it.

The record in this case clearly shows that the accused has had one fair trial of the case on the merits. The indictment certainly informed him of the charge, the gist of which was

conspiracy. He has not been prejudiced and no substantial right has been denied him.

The cases relied upon in the majority opinion to sustain the right of this court to interpose an objection to the validity of the indictment were decided prior to the operation of our liberalizing statutes. This case should be viewed in the light of those statutes and of our modern cases, such as *Sullivan* v. *Commonwealth*, 157 Va. 867, 161 S. E. 297, and *Farewell* v. *Commonwealth*, ante, page 475, 189 S. E. 321, this day decided. Our own rules should be applied which forbid objections to the procedure in trial courts unless they are timely made there.