Earl Lester AUSTIN, Petitioner,

v.

C. C. PEYTON, Superintendent, Virginia
State Penitentiary, Respondent.

Civ. A. No. 67–C–32–L.

United States District Court
W. D. Virginia,
Lynchburg Division.

Jan. 17, 1968.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus by Earl Lester Austin, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241 and is filed in forma pauperis.

Petitioner is currently serving a life sentence pursuant to his conviction of robbery in the Corporation Court for the City of Lynchburg, Virginia on December 12, 1966. Petitioner was also convicted and sentenced by the court to twenty years for burglary, twenty years for grand larceny and ten years each for two counts of abduction. The sentences were ordered to run consecutively. Petitioner was represented by two court appointed attorneys and entered a plea of not guilty. Jury trial was waived. Petitioner appealed from his convictions and on June 14, 1967 the Supreme Court of Appeals of Virginia denied his writ of error. Petitioner did not seek state habeas corpus relief. On August 30, 1967, he filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. The cause was ordered transferred to this court and on September 7, 1967, petitioner's petition was dismissed for non-exhaustion. Petitioner forwarded a copy of the order of the Supreme Court of Appeals denying his motion for a writ of error and on October 6, 1967, the cause was reinstated. Although petitioner did not seek state habeas corpus relief he is, nevertheless, properly before this court because his present claims have been presented to and adjudicated by the state's highest court. "If a question is presented and adjudicated by the state's highest court once, it is not necessary to urge it upon them a second time under an alternate procedure." Grundler v. State of North Carolina, 283 F.2d 798, 800 (4th Cir. 1960); accord, Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964); Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963).

Petitioner contends that he is entitled to habeas corpus relief on several grounds. His first ground is that he was denied due process because the trial court did not grant his motion for a change of venue. However, the denial of a motion for a change of venue constitutes an error in procedure normally correctable only by writ of error or appeal,

not habeas corpus. "It is settled by numerous decisions that errors of fact or law committed during the trial of a criminal case, which do not involve the denial of a constitutional right, may be reviewed only on appeal and not in a habeas corpus proceeding. See, e. g., Grundler v. State of North Carolina, 4 Cir. 1960, 283 F.2d 798. The judgment of conviction is not subject to collateral attack and the writ of habeas corpus cannot be used as writ of error; the scope of review on habeas corpus is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged * * *." (citing cases) Harrison v. Boles, 307 F.2d 928, 931 (4th Cir. 1962). However, the errors committed in the trial court may be substantial enough to amount to a denial of due process. See Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). This is the substance of petitioner's allegation. Here petitioner made a motion for a change of venue at the beginning of the trial on the ground of prejudicial publicity in the local newspaper. After hearing the evidence in support of petitioner's motion the court determined that it did not establish any prejudice or public sentiment against petitioner and denied the motion. Petitioner thereupon waived his right of trial by jury and was tried to the court without a jury. There being no jury the alleged prejudicial publicity could have affected only the actions of the trial judge. Petitioner claims that the newspaper publicity, the denial of petitioner's motions, and the length of the sentences, life and sixty years, show that the judge was prejudiced. However, we find no evidence that the judge acted in any improper manner so as to deprive petitioner of his right to a fair trial. The newspaper articles were mere routine factual accounts of the case not likely to arouse any unfavorable or adverse feelings. That the newspaper articles were not inflammatory and did not incense the community is borne out by the fact that no one besides the jurors, witnesses and court officials appeared in court at the time of the trial. As to the denial of the petitioner's motions, this fact without more does not show bias. Furthermore, the length of each sentence was a matter within the judge's discretion [1] and as provided by law. It does not show any prejudice. "The prejudice must have manifested itself so as to corrupt due process." Dennis v. United States, 302 F.2d 5, 8 (10th Cir. 1962). This it has not done.

■ Petitioner further claims that the denial of his motion for a change of venue denied him the right of trial by jury. He contends that because an impartial panel could not have been obtained from the area where the trial was held, he had no choice but to waive jury trial after his motion was denied to avoid being tried by a prejudiced jury. Thus, he says the waiver was involuntary. The court finds no merit in this contention. The petitioner may not be heard to say that his waiver of his right to a jury trial was involuntary where open and free alternatives were available to him. He simply could have accepted a trial by jury and then presented his claim of an unfair trial to the courts via appeal and habeas corpus, state and federal. Petitioner was not denied the right of trial by jury or coerced into waiving that right in view of the remedies available to him. In addition petitioner's argument assumes the point. No voir dire examination was ever held to determine if, in fact, prejudice permeated the community.

Petitioner next contends that the denial of his motion for a continuance denied him due process. In Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed. 2d 921 (1964) the Supreme Court also entertained the present question. Concerning the denial of a motion for a continuance the Court said: "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process * * *.

1. See, Bracey v. Commonwealth, 119 Va. 867, 89 S.E. 144 (1916).

There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." 376 U.S. at 589, 84 S.Ct. at 850. Applying the ad hoc rule the Court held that the denial of petitioner's own motion for a continuance did not deny him due process where the petitioner did not assert any reason why the readily available evidence sought was not obtained by the petitioner before the hearing and presented in court; where he did not name the witnesses he wanted to call; and where he did not state the substance of the witnesses' testimony.

■ Here petitioner by his attorney made his motion at the beginning of the trial on the ground that a delay was necessary to allow petitioner to summons several witnesses. However, the testimony clearly shows that petitioner did not tell his attorneys about the witnesses until the day of the trial. Based on this factor and the fact that all the witnesses lived without the state beyond the jurisdiction of the court, the trial judge denied the motion. Considering the circumstances of the case that the petitioner did not tell his attorneys about the alleged witnesses until the morning of the trial even though he had been in custody awaiting trial for approximately five weeks and that his attorneys had questioned him about the existence of any witnesses; that petitioner did not advise the court as to the nature and substance of the witnesses' testimony; that there was overwhelming evidence against petitioner; and that there was no showing that the refusal prejudiced petitioner's rights we also cannot say "that the errors, if any, committed in the trial court or any of the occurrences therein were of such stature that thereby the appellant was constitutionally deprived of a fair trial or of due process." Jackson v. People of California, 336 F.2d 521, 525 (9th Cir. 1964).

■ Petitioner also claims that he was denied due process because the indictments for abduction failed to state where the abductions occurred, thus providing him with insufficient information on which to prepare his defense. Under § 19.1–166 [2] of the Virginia Code an indictment which "informs the accused of the nature and cause of the accusation against him shall be good * * *." See Livingston v. Commonwealth, 184 Va. 830, 36 S.E.2d 561 (1946). The indictment clearly stated the nature and cause of the charge against petitioner enabling him to prepare his defense and to plead his former conviction as a bar to a subsequent prosecution for the same offense and he was not thereby deprived of any constitutional rights. See Tincher v. Boles, 364 F.2d 497 (4th Cir. 1966); United States v. Roberts, 296 F.2d 198 (4th Cir. 1961).

■ Petitioner's last ground for relief is based on the double jeopardy clause of the Federal Constitution. He contends that he was placed twice in jeopardy because he was convicted of four separate offenses when in fact the offenses of burglary, grand larceny and abduction are all a part of the offense of robbery. He maintains that the former offenses are merged into the crime of robbery so that they are not separate punishable offenses. The first matter before the court concerns the applicability of the double jeopardy clause of the Federal Constitution to the states. The Court of Appeals for the Fourth Circuit has recently suggested that in some cases the double jeopardy clause may apply to the states. The court in prohibiting harsher punishment on retrial gave cognizance to the issue of double jeopardy on habeas corpus and stated: "We find ourselves in full accord with the Second Circuit in United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), as to the resolution of the issue of whether the double jeopardy clause of the Fifth Amendment is applicable to the states. That court con-

2. Va.Code Ann. § 19.1–166 (repl. 1960).

cluded that at least certain of the policies militating against placing a defendant twice in jeopardy are 'incompatible with due process of law.' Id. at 850. As that circuit found true of the multiple prosecutions to which Hetenyi was subjected, similarly, we think that the North Carolina practice of permitting an accused, who has successfully appealed his conviction, to bear the risk of an increased sentence: '[i]s that kind of double jeopardy * * * [which] has subjected him [to] a hardship so acute and shocking that our policy will not endure it * * * [and] violate[s] those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." ' Palko v. [State of] Connecticut, 302 U.S. 319, 328, 58 S.Ct. 149, 153, 82 L.Ed. 288 (1937)." Patton v. State of North Carolina, 381 F.2d 636, 643 n. 20 (4th Cir. 1967).

 Viewing petitioner's claim we find that he has not been placed in double jeopardy. Before the double jeopardy clause of the Fifth Amendment may be invoked the same offense must be involved. "[T]he test of identity of offenses when double jeopardy is pleaded is whether the same evidence is required to sustain [each offense] * * *." Montgomery v. United States, 146 F.2d 142, 143 (4th Cir. 1944); accord, Short v. United States, 91 F.2d 614 (4th Cir. 1937). Here petitioner was convicted of robbery, burglary, grand larceny and abduction, and under the law of Virginia each of these offenses is treated separately and is governed by a separate statutory provision.[3] The petitioner's conviction of robbery was based on the taking of money from the Kroger Company store; the conviction of burglary was based on the breaking and entering of Earl Meadows' house to commit a felony; the conviction of grand larceny

was based on the taking of Earl Meadows' car; the conviction of one charge of abduction was based on the seizure of Earl Meadows and the other on the seizure of Louis BeCraft. Thus, totally different evidence was requited to sustain each offense and, therefore, petitioner was not placed twice in jeopardy.

Therefore, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

A certified copy of this opinion and judgment is directed to. be sent to the petitioner and to the respondent.

---

3. Grand Larceny—Va.Code Ann. § 18.1–100 et sequi (repl. 1960) ; Burglary—Va. Code Ann. § 18.1–86 et sequi (repl. 1960) ; Abduction—Va.Code Ann. § 18.1–36 et sequi (repl. 1960) ; Robbery—There is no statutory robbery in Virginia.

Falden v. Commonwealth, 167 Va. 542, 189 S.E. 326 (1937). Instead, it is a common law crime in Virginia. Jones v. Commonwealth, 172 Va. 615, 1 S.E.2d 300 (1939).