COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

HAROLD DONNELL LIVINGSTON

MEMORANDUM OPINION[*] BY
v.      Record No. 1933-14-1                    JUDGE ROBERT P. FRANK
                                                MARCH 29, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge

Dalton L. Glass, Assistant Public Defender, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Harold Donnell Livingston, appellant, appeals his conviction for conspiracy to distribute a

controlled substance in violation of Code §§ 18.2-248 and 18.2-256.  On appeal, he argues the trial

court erred in denying his motions to strike the evidence.  For the reasons that follow, we affirm the

decision of the trial court.

Background

We review the evidence in the light most favorable to the Commonwealth, as the prevailing

party below, and determine whether "any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  Commonwealth v. McNeal, 282 Va. 16, 20, 710

S.E.2d 733, 735 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  In a bench trial,

"[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the

[trial judge] who has the opportunity to see and hear that evidence as it is presented."  Sandoval v.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)).

When the sufficiency of the evidence is challenged on appeal, this Court must "examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it." McNeal, 282 Va. at 20, 710 S.E.2d at 735 (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)).

On June 27, 2012, Chesapeake Police Detective Hammond and other officers conducted a controlled drug buy, using a confidential informant. Hammond and his partner, Detective Barlow, were assigned to cover the informant, who was positioned sitting on a curb in a small parking lot behind a convenience store. The detectives gave the informant $40 in cash, consisting of two $20 bills they had previously copied. Hammond was provided with a photograph of their target, Kenyon Thomas.

At approximately 5:00 p.m., a blue Ford Explorer drove into the rear parking lot of the store. The informant got up and walked to the driver's window of the Explorer. Thomas was the front seat passenger. Appellant was the driver. No one else was in the vehicle. When appellant stopped the vehicle, he did not put the vehicle in park and the brake lights remained illuminated. Appellant never took his foot off of the brakes. Hammond could clearly see the informant's interaction with appellant and Thomas. The informant spoke to both men through appellant's window. He then reached through the window across appellant and appeared to hand something to Thomas. The detectives did not see what was transferred nor did they hear the conversation. The informant then walked away, and appellant immediately drove out of the parking lot. The entire exchange lasted

approximately ten seconds. A detective recovered two small baggies of crack cocaine from the informant after the incident.

The police stopped the Explorer, immediately removing appellant and Thomas from the vehicle and placing them under arrest. Detective Burton searched Thomas, who possessed $696 in cash, including the $40 used in the controlled purchase, a cell phone, and a small amount of marijuana. From appellant, the police recovered $442 in cash and a cell phone. They found no drugs or marked money on appellant.

After the Explorer was towed to the police station, an officer searched the vehicle and found a small, three inch by five inch paper located in plain view in the center console in front of the gear shift.[1] The paper contained names, numbers, monetary values, and abbreviations. At trial, Investigator Scott identified the paper as an "owe sheet," a document used to keep track of customers who had purchased drugs, the amounts purchased, a general description of the drugs, and the purchase prices. The back of the "owe sheet" contained additional numbers consistent with standard drug amounts. Among other names, the "owe sheet" contained the names "Ken" and "Harold."[2] The number "1350" was written next to "Harold."

At the police station, after being advised of his <u>Miranda</u> rights, appellant agreed to speak with Investigator Scott. Appellant admitted driving the Explorer, which he said belonged to his sister. Appellant said he picked up Thomas, who asked for a ride to a particular convenience store because he "had to get something." When asked whether he knew Thomas was selling drugs there,

---

[1] At no time did any of the officers see anyone in the vehicle except appellant and Thomas.

[2] These are the first names of Thomas and appellant.

appellant responded, "You know."[3]  The investigator followed with, "So, was he?"  Appellant did not answer, but simply stared at the investigator.

Appellant told Scott he did not know how much money he possessed at the time, but when Scott counted $442 in cash in front of appellant, appellant responded, "I got three businesses."[4]

At trial, appellant, a convicted felon, testified he worked at a convenience store owned by his family every day of the week.  He stated he worked there the day before the incident.  Scott knew appellant was being untruthful because Scott knew that this store had burned and had been closed for some time.  Scott had observed the burned building the morning of the offense.

Appellant testified he was riding around when he encountered Thomas.  He picked up Thomas, and they rode "around," listening to music.  Thomas asked for a ride "to the store," but he never indicated his specific purpose other than "to get something."  Upon arriving at the store, appellant pulled into the parking lot and drove "behind the store" where he observed a man "squatting in between two cars."  Thomas told appellant to "stop right here."  Appellant stated he still thought they were going to the store and he "didn't think too much about it" when Thomas told him to stop.  Appellant remembered Thomas and the informant spoke and "d[a]pped up."[5]  Appellant and Thomas then drove away.  Appellant insisted he never saw any money or drugs.

Appellant then explained the earlier interview with Scott.  Appellant stated Scott yelled at him during the interview and was "trying to make me know something that I didn't know."  Appellant testified Scott repeatedly said to him, "You know what's going on.  You know what's

---

[3] No testimony indicated what that response meant.

[4] The three businesses consisted of a detailing business with his father, a construction business with his grandfather, and a family owned convenience store.

[5] "'Dap' is defined in the Urban Dictionary as '[t]he knocking of fists together as a greeting, or form of respect.'"  In re Tracy B., 704 S.E.2d 71, 74 n.2 (S.C. Ct. App. 2010) (quoting Aaron Peckham, Urban Dictionary 98 (2005)).

going on." Appellant stated he replied to Scott, "I wasn't aware of any of this, Sir." Appellant denied telling the investigator, "You know" in response to any questions.

Appellant also denied that his family's convenience store burned down prior to the incident. He said it burned "[w]ay after [he] got arrested." Appellant denied seeing the "owe sheet" in the vehicle, and he denied he owed $1,350 to Thomas. When asked on cross-examination how the marked buy money came into Thomas's possession, appellant stated, "I couldn't tell you. Only thing I saw, he d[a]pped hands and released hands."

Appellant claimed he did not answer Investigator Scott's question about Thomas selling drugs because he "had a right to be quiet," and he would not answer the investigator if he kept yelling at him. He further claimed Scott had said, "You know," before he could answer the question.

The trial court found the evidence sufficient to convict appellant of conspiracy to distribute drugs. This appeal follows.

<u>Analysis</u>

Code § 18.2-248(A) provides that it is "unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance." Code § 18.2-256 prescribes punishment for a conspiracy to distribute drugs.

Appellant challenges the sufficiency of the evidence, contending there was no evidence of an agreement between him and Thomas.

> We review lower court factfinding with the highest degree of appellate deference. We do not ask whether we, as appellate judges, believe "the evidence at the trial established guilt beyond a reasonable doubt." <u>Stevens v. Commonwealth</u>, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (citation omitted). We ask only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> This deferential standard applies not only to basic facts, but also to

> any resulting inferences so long as they do not push "into the realm of non sequitur." Crowder v. Commonwealth, 41 Va. App. 658, 665, 588 S.E.2d 384, 388 (2003). An inference loses its rationality only when it becomes so attenuated as to appear to stand alone, deriving none of its probative strength from the proven basic facts.

Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).

A fact finder is entitled to draw reasonable inferences from proven facts, so long as "all circumstances proved [are] consistent with guilt and inconsistent with innocence and exclude all reasonable conclusions inconsistent with guilt." McMorris v. Commonwealth, 276 Va. 500, 506, 666 S.E.2d 348, 351 (2008).

> "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). Moreover, the crime of conspiracy is complete when the parties agree to commit an offense; Virginia does not require proof of an overt act in furtherance of the conspiracy. Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992). The existence of a conspiracy may be proven by circumstantial evidence. Wright, 224 Va. at 505, 297 S.E.2d at 713.

Chambliss v. Commonwealth, 62 Va. App. 459, 466-67, 749 S.E.2d 212, 216 (2013).

If there is an agreement to commit an offense, the parties need not commit an act in furtherance of the underlying crime. Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). The crime is complete when the parties agree to commit the crime. Falden, 167 Va. at 544, 189 S.E. at 327.

Appellant argues that, at best, the evidence proved he aided and abetted Thomas. "In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove 'the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" Williams v.

- 6 -

Commonwealth, 53 Va. App. 50, 60-61, 669 S.E.2d 354, 358 (2008) (quoting Zuniga v.

Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988)).

"A common purpose and plan may be inferred from a development and collocation of

circumstances." Brown v. Commonwealth, 10 Va. App. 73, 78, 390 S.E.2d 386, 388 (1990)

(quoting United States v. Godel, 361 F.2d 21, 23 (4th Cir. 1966)).

> Where . . . it has been shown that the defendants "by their acts
> pursued the same object, one performing one part and the others
> performing another part so as to complete it or with a view to its
> attainment, the jury will be justified in concluding that they were
> engaged in a conspiracy to effect that object."

Id. (quoting Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987)).

The issue before us is whether appellant and Thomas entered into an agreement to sell

drugs or whether appellant was present and simply procured, incited or encouraged Thomas to

sell drugs.

> "Mere presence when a crime is committed is, of course, not
> sufficient to render one guilty as aider and abettor. There must be
> something to show that the person present and so charged, in some
> way procured, or incited, or encouraged, the act done by the actual
> perpetrator. But whether a person does in fact aid or abet another
> in the commission of a crime is a question which may be
> determined by circumstances as well as by direct evidence."

Charles v. Commonwealth, 63 Va. App. 289, 301, 756 S.E.2d 917, 923 (2014) (quoting Triplett

v. Commonwealth, 141 Va. 577, 586, 127 S.E. 486, 489 (1925)).

Here, appellant did more than drive Thomas to the drug transaction. Thomas told

appellant to drive to a specific convenience store, but without any further direction from Thomas,

appellant immediately drove to the rear of the convenience store. If appellant was simply giving

Thomas a ride to the store, why would he drive to a more secluded location in the rear of the

store, instead of parking in front of the store? The informant was sitting on a curb in the rear of

the store, not the front.

Furthermore, appellant never put the vehicle in park, the brake lights were still illuminated, and appellant never took his foot off of the brake pedal. These facts constitute evidence that appellant knew they would be at this location for a short duration. In addition, immediately after the encounter with the informant, which lasted approximately ten seconds, appellant drove out of the parking lot. Thomas never exited the vehicle or entered the store. Furthermore, the informant approached appellant's side of the vehicle, not the side where Thomas was seated. The informant spoke to both appellant and Thomas, and he reached across appellant and appeared to hand Thomas an unknown item.

If appellant and Thomas had agreed to sell drugs, what would the agreement include? They would have agreed where the transaction would take place—in the rear parking lot of the convenience store. If appellant believed Thomas when he said he was going to "get something" at the store, appellant would have parked in the front of the store. Appellant's conduct suggests knowledge of a drug transaction. In addition, appellant and Thomas would have agreed on how the transaction would occur and the mechanics of the transaction. When appellant stopped the vehicle, he did not put the vehicle in park and he did he remove his foot from the brake pedal. Those actions indicate appellant knew of the short duration of the agreed upon drug deal.

While the detective who observed the encounter did not know what the informant said to appellant and Thomas, it is reasonable to infer the informant was aware that both appellant and Thomas were involved in the sale. Although appellant denied knowledge of the transaction, the informant reached across appellant and appeared to hand something to Thomas. Since the cocaine was later recovered from the informant, and the buy money was later recovered from Thomas, it follows that Thomas handed drugs to the informant in exchange for the money. In addition, appellant told the detective, and he testified in court, that the informant and Thomas "dapped," meaning they performed a fist bump. Thus, appellant acknowledged the two men

- 8 -

touched hands during the encounter. The fact finder could properly reject appellant's testimony that he was unaware that a drug transaction took place or that he did not see drugs or money during the encounter with the informant. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). The trier of fact is not required to accept a party's evidence in its entirety, Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986), but is free to believe and disbelieve in part or in whole the testimony of any witness, Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

While appellant denied being aware of the "owe sheet," it was located in "plain view" on the center console in front of the gear shift. The trial court did not believe appellant. Testimony revealed that the "owe sheet" listed quantities of drugs, purchase prices, names, and amounts owed by purchasers. The fact finder could reasonably infer the document was an ongoing business record of multiple drug transactions, and, coupled with the evidence of the location of the "owe sheet" in the vehicle, appellant was aware of the existence of the "owe sheet" and he knew that Thomas had been selling drugs.

Further, appellant lied about the "owe sheet," the source of the $442 found on his person, and the details of his interrogation. The trial court could reasonably infer that appellant's false answer concerning the source of his funds, coupled with other evidence, would indicate the funds were the product of illegal drug sales.[6] The trial court "was at liberty to discount [appellant]'s self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" Armstead v. Commonwealth, 56 Va. App.

---

[6] "[A] large amount of cash, [is] a factor that may be considered as some evidence of involvement in drug distribution." Johnson v. Commonwealth, 12 Va. App. 150, 153, 402 S.E.2d 502, 504 (1991).

569, 581, 695 S.E.2d 561, 567 (2010) (quoting Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008)).

Appellant further argues he could not be convicted of conspiracy because no evidence proved that he benefited from the transaction, citing Reed v. Commonwealth, 213 Va. 593, 594, 194 S.E.2d 746, 747 (1973). In the factual recitation in Reed, the Court stated there was no showing that Reed received any benefit from the transaction, but that fact was not part of the Court's ruling. Appellant cites no cases, nor have we found any, that suggests this additional element of the offense.

Appellant maintains the Commonwealth's case was deficient because it did not prove "the identity and quantity of the substance contemplated by the agreement," citing Graves v. Commonwealth, 234 Va. 578, 581, 363 S.E.2d 705, 707 (1988). In Graves, the accused was indicted under Code § 18.2-248.1 for conspiracy to sell more than one-half ounce of marijuana. This statute provides different penalties depending on the quantity of marijuana involved. The Court concluded that, based on Code § 18.2-248.1, the Commonwealth must "prove an agreement to distribute a proscribed substance and . . . prove both the identity and the quantity of the substance contemplated by the agreement." Id. Here, appellant was charged under Code § 18.2-248. Therefore, Graves has no application to appellant's case.

In summary, the evidence and all inferences therefrom belie appellant's position that he simply was a friend who accommodated Thomas's request for a ride.

Accordingly, we cannot say the trial court erred in denying the motion to strike. The trial court's finding of guilt was not plainly wrong or lacking in evidence to support it.

Affirmed.